May it please the Court, Jeffrey Schwartz on behalf of Murphy Oil USA, Inc. Your Honors, this is the rare case where the decision was written before the appeal was even filed, and that's true in this case for three reasons. One, this Court's decades-long adherence to the rule of stare decisis and its abidance by prior panel decisions absent in intervening on bonk reconsideration or Supreme Court decision to the contrary. In this particular situation, there's no doubt that D.R. Horton, the case decided several years ago, authored by Judge Southwick, was simply reaffirmed by the Labor Board in the Murphy Oil case. Indeed, an administrative law judge writing an opinion just a couple of months ago wrote, this is Prime Healthcare, Paradise Valley, that in Murphy Oil, the Board in card parlance doubled down on its D.R. Horton case. The Board clearly and expressly reaffirmed D.R. Horton's concludings. Its decision was straightforward, clearly articulated, well supported, and noted with due respect to the Courts that have rejected its D.R. Horton rationale, it would adhere to it. So we have no question that we are simply addressing a prior panel decision here. So that's number one of why this is a case where the decision has already been written. Our decision or the NLRB's decision? Your decision, Judge Jones. Oh, okay. Thank you for telling us what to do. So the first reason is it's clear precedent. Second reason is the Board has acknowledged that. It is a reaffirmance. They're not attempting to distinguish its decision in our case from its decision in D.R. Horton. And the third reason, from a substantive basis, is that Judge Southwick's opinion in D.R. Horton is well reasoned. It's grounded in solid law. It's consistent with the Supreme Court's strong preference for arbitration. And I think that Judge Southwick put it well on page 25 of the decision in D.R. Horton where he wrote, the issue here is narrow. Do the rights of collective action embodied in this labor statute, I'm inserting there the National Labor Relations Act, make it distinguishable from cases which hold that arbitration must be individual arbitration? And the rest of that case, which answers that question, the Fifth Circuit's decision in D.R. Horton, makes it very clear that arbitration prevails in the conflict that the Board is contending exists between the Federal Arbitration Act and the National Labor Relations Act. The conflict we contend does not exist. Counsel, how many circuits have addressed this? I was disappointed in a way that D.R. Horton case was not, certainly wasn't sought on it. There was no circuit split at the time. Though, is there any contrary circuit authority now and if not, how many agree with D.R. Horton? There's no other case directly on point. There are other circuit courts that have weighed in, generally speaking, about the validity of a class action waiver. Our case here is unique because it touches on two different circuits. We have a district court holding in the underlying proceeding that the class action waiver is enforceable in that case, which has now, of course, been dismissed. But you have the Ninth Circuit. You've got the Sixth Circuit. You've got the Eleventh Circuit, all affirming the validity of a class action waiver within an employee context. Is the jurisdiction of the venue, at least for a petition for review, any circuit in which Murphy does business? Why are we in the Fifth Circuit on this? Why are you in the Fifth Circuit? I don't know why I'm here, but why are you here? The National Labor Relations Act has a unique venue provision among other government agencies that specifically provides for the right to file a petition for review in any circuit where you transact business. You could file it in addition to the D.C. Circuit, no matter what, and you could file it in the circuit where the alleged unfair labor practice charge arose. Well, filing in the Eleventh Circuit would have at least created a potential circuit split that would have allowed this to be resolved a little more readily, perhaps, by the Supreme Court. But I certainly understand the motivations for coming here instead. And we simply followed what we have the right to do, and obviously, we're impressed enough with the Court's prior opinion in D.R. Horton to believe that this Court will comply with what it's done for decades and follow its prior precedent. We've also asked in our petition for review that this Court issue an order that will prevent what I'm going to call a circus of uncertainty. The Labor Board takes the position that it is not bound by this Circuit's decision in D.R. Horton, or if this Circuit were to grant our petition for review, it would also not be bound by that decision either. And why I call this the circus of uncertainty is it creates a scenario whereby, let's just say, you know, the Court issues a decision from the bench today, granting our petition for review, and tomorrow, plaintiffs working for Morphe Oil file a lawsuit alleging violations of the Fair Labor Standards Act in Arkansas. And we then do exactly what we did in the district court in Alabama and move to compel arbitration. Well, I mean, that hypothetical is a little off because Morphe Oil would get the benefit of collateral estoppel at least, res judicata, right? They can't non-acquiesce with respect to Morphe. They may non-acquiesce with respect to other employers. I would hope, Judge Jones, that you're right. I don't know that the Board . . . I'd be curious to see if they would agree with that in any way. Well, I had the impression that you were asking for an order that they be not allowed to disrespect, to dis our opinion anywhere with respect to anybody, or are you just seeking that kind of relief prospectively from Morphe? Obviously, my only interest before the Court is to protect my client's interest. So there's that element to it. We believe that there is the risk that the Labor Board would contend that they can continue to say that Morphe Oil is in violation of Section 7 if they're enforcing a class or collection of action waiver outside of the jurisdiction of the Fifth Circuit. Ideally, I would like to see a more . . . Well, what did your brief say? Your brief said everywhere . . . I mean, I thought your brief wasn't limited to Morphe Oil. That's correct. Okay. That's correct. And I know . . . And what's your basis for that? Let's assume that was the case. Let's assume that was the case because a number of agencies, including the IRS, don't acquiesce to one circuit's ruling. EPA doesn't acquiesce. I mean, who does acquiesce? Right. I believe the Social Security Administration takes the same position, that they aren't bound by it. So are you making a broadside attack on that assertion of executive authority, or do you have some other basis for this? I think it falls within the Court's authority under either the All-Writs Statute or the Contempt Statute, that what we are creating here by virtue of the current status quo is going to be this continuing funneling of appeals to the Fifth Circuit. Well, let me just suggest to you . . . Well, I'll bet you we can handle that, but let me just suggest to you that, you know, the real root of the circus of uncertainty is the fact that they make policy by lawsuit rather than by rule, don't you think? Well, I enjoy the opportunity to get into that intellectual conversation. I think the Labor Board, in the last several years, has done it by both. Well, I think your argument is about as much an intellectual exercise as on this particular point, unless you've got a case that says the All-Writs Act would justify our issuing such a broad holding. If the broadest order at all is not possible, I believe a suborder that would enforce this Court's decision against any employer . . . prohibiting the Board from finding that an employer that transacts business within Louisiana, Texas, or Mississippi can be found to be violating Section 7 by enforcing a class or collective action waiver outside of those three states because they would have the right to continue to enjoy the benefit of this Court's decision in D.R. Horton and hopefully in Murphy Oil. And you know, my co-counsel in this case, who's not here today, recently filed a petition for review with this Court on behalf of Neiman Marcus. Same exact issue, same thing happening. The underlying unfair labor practice did not take place within the three states. So we do think that the Court can enforce its jurisdiction against those employers that transact business in these three states. Let me ask you about the part of the NLRB order that actually is consistent with what we held in Horton, the order in this case consistent. And that is that your actual arbitration agreement was not sufficiently clear that employees were not barred by the language from filing unfair labor practices administratively with the Board. Were we to uphold that as well, is that a . . . are you really objecting to that? I know you have amended the arbitration agreement as of 2012, perhaps it was. So respond to that part of their order and what we should do with it. Our amended agreement was directed precisely to the Labor Board's initial finding that the original agreement was violative. Indeed, there were negotiations at that time between Murphy Oil and the Labor Board to try to settle the case, and that agreement was a result of what was a settlement that was disturbed . . . The extra language . . . The extra language, correct, Your Honor. . . . of that settlement? And what happened was the Board issued D.R. Horton literally during the midst of those underlying settlement discussions, and so therefore they no longer were granting us the right that the amended agreement was going to be kosher as far as the Board was concerned. Were we to find, which I have no idea if we would, that the amended agreement is sufficient notice for employees, you still have the older agreement, which is still applicable to employees who are employed prior to the date of the new agreement, it would seem to me that that part of the Board order . . . you haven't shown particularly other than your argument that it was sufficiently clear in the old agreement, but I think D.R. Horton, it's similar language. I don't know if it's really distinguishable. So if we uphold that part of the Board order, does that have any adverse effect to Murphy that you would even object to? The issue, I guess, Judge Southwick, would be what would be the remedy if that was . . . Well, the remedy they set out is posting these notices and the other things that you know better than I do. Right. But typically the way a Board remedy involving a notice posting is done is to alert the employees to the fact that there was an unfair labor practice and that this is the result of it. The result of it here was the new agreement, and so much time has passed since that old agreement. I would suspect there's very few employees that even remain with the company, given the high rate of turnover, that would have even continued to be employed who were parties to that original agreement. I think it would be a remedy the Board would really not really care too much about, quite honestly. Well, we'll find out, perhaps. If we grant you some or all of the relief that you're seeking procedurally, in your view, are we able to do that ourselves, or does this, in any event, have to go back to the Board for whatever further proceedings we might direct? No, you can vacate the entire Board order, and that will end the process. The Labor Board need not have any further involvement in this proceeding. I take it you're not arguing your six-month untimeliness issue here? We are. I'm just trying to highlight what we think are the most significant. Well, they said you waived it, and I was sort of interested in that. Well, our position is that we asserted it as a defense, and the answer to the complaint, the Labor Board process, is very much like court. They file an initial complaint, just like a judicial complaint filed in federal district court. The employer, then, is tasked with the responsibility to file an answer to that complaint. We asserted that defense in our answer. They say you didn't press it, right? That's the ground for waiver. So this is Section 160B about waiver, right? Correct. So what's your answer? My answer is that we asserted it as a defense, and therefore preserved it. Whether we pressed it or not is besides the point. The defense still exists. Did they rule on it in their order on the case? We did not present it in the dispute with the Labor Board underneath. So to that extent, we did not raise it, but I believe the law is clear that it's preserved for this court, irrespective of whether we brought it before the Board, because they're not surprised by it. We raised it as a defense in our answer, and it remains a defense that we can bring up at any time. Okay, but they didn't write on it? That's correct. Okay. And the same would hold true for our collateral estoppel argument, although, of course, that's separate because there was no opportunity to do that before coming before this court. The underlying dispute is effectively gone. The underlying case has been dismissed, and there's really no controversy any longer in that regard. Right. Thank you. Okay, thank you. You do have time for rebuttal. Mr. Barrett? Yes, Your Honor. We know you moved to have the whole in-bank court here and not just the three of us, but this is all you get. Yes, Your Honor. Thank you. Thank you. Well, may it please the Court. My name is Jeff Barrett, and I'm obviously here today on behalf of the National Labor Relations Board. Your Honor, the Supreme Court has never, in enforcing an arbitration agreement under the Federal Arbitration Act, extinguished a substantive statutory right core to the statute creating it. Look, don't argue D.R. Horton to us, because you've argued it in your brief, and we're bound by it, and I don't think you can expect us to be writing against the binding precedent of this Court. Now, my colleagues might want to hear all these arguments. They will fall on my deaf ears as a matter of stare decisis. Yes, Your Honor. The Board is not here, I will be clear, as I think it is clear from our brief, to suggest that there's distinguishing factors in Murphy Oil. We certainly respect the decision of the panel in Horton, and we understand we are bound by it. So why aren't you bound by it in the Fifth Circuit? We believe we are bound by it in the Fifth Circuit, Your Honor. That is why, as Judge Southwick pointed out, we filed a petition to have this case heard en banc. We still believe that en banc consideration is appropriate. We maintain that the panel's decision relies on a principle of FAA jurisprudence that the Supreme Court has not yet addressed, and we believe that as the issue continues to mature through the Board's decisions, that we are continuing to issue decisions, and we stand by the policy that the Court rejected in D.R. Horton. Are you bound by it for other companies that do business in the Fifth Circuit? Your Honor, because of the relatively unique nature of the board's, of the Act's venue provision, we can, we have no certainty or no ability to predict where a case will be appealed, or where petitions for review will be filed. So in issuing further board decisions, there's no certainty, even if venue is available in the Fifth Circuit, that a party will avail itself of coming to the Fifth Circuit. So because the National Labor Relations Board is a national agency, and we administer a federal act on a nationwide scale, while we certainly give all due respect and consideration to the decision of one court, as I would point out in Murphy Oil, there was, we did not ignore certainly the decision, the panel decision in Horton. We addressed it. However, we're not controlled, the board is taking a position that is not controlled or guided, necessarily guided by that in its ultimate decision. So basically you're saying that any company that has this kind of agreement is vulnerable to having to defend something before an ALJ, I presume, before the board, spend thousands of dollars doing that, and then if they transact business in the Fifth Circuit, come and file a petition for review costing thousands of dollars more? Your Honor, this is the first case beyond D.R. Horton that has come to this court. There are, yes, and there are additional cases that have been filed since. Neiman Marcus. Neiman Marcus. There are several others. I believe Chesapeake Energy. We have, we have a case that is pending in the Eighth Circuit in Cellular Sales, Missouri. It is possible that as additional decisions are issued by the board, that they will, that venue will be found in other circuits. Well, how often do you go around doing this? I mean, it just seems to me an abuse of companies when you've received a, an adverse decision in a circuit court to pummel them and saying, we're not, you know, and make them litigate back to the circuit that's already decided in their favor. Well, Your Honor, when the, when Murphy Oil decided to pursue this case in the Fifth Circuit, we took what we felt was the appropriate action and sought en banc review. I understand that. Go ahead. Excuse me. My apologies. I didn't mean to interrupt. Go ahead. But in these efforts, we are seeking to, to, you know, advance the conversation to continue to allow the board to issue these decisions and ultimately with the eye of either having a resolution through various courts of appeals or if there's a circuit split or if it's deemed otherwise appropriate to secure Supreme Court review. So, basically, everybody's going to have to pay the penalty until you either vindicate or have your policy repudiated, is that right? I would disagree with the characterization that they would have to pay the penalty, but if they want to, in the board's opinion, continue to impose arbitration agreements that deprive their employees of their core Section 7 substantive right to engage in concerted activity, then the board will maintain its well-established principle that these agreements cannot be enforced. Well, suppose we rule against you in this case. Are you going to pursue Neiman Marcus into the Fifth Circuit? Are you going to pursue Chesapeake into the Fifth Circuit? Your Honor, the — I will answer your question in reverse. Because those are both legitimate. I mean, those are — those companies are both legitimate Fifth Circuit companies, so. Well, certainly. And there are also legitimate companies throughout the country. But I will answer your question in — first of all, it is, of course, not necessarily for me. I work for the general counsel. I understand that. It's more the general side. But that said, in Chesapeake, I believe there was an effort to hold the case in abeyance pending the outcome of this, and that decision — that request from the board was denied. So there is not an outright, full-on effort to, you know, partake of every court procedure available in every case. That was the third case that has come to the Fifth Circuit, and we tried to put it in abeyance knowing that, of course, Justice Horton will impact this, so will the efforts to secure en banc review, and Murphy will impact that. So what the board will do after this case and after Chesapeake is presumably heard, I obviously can't say. But efforts were made to do something short of, as you would characterize it, punishing the company, given the panel's decision in Horton. Well, counsel, there is a distinction that you're certainly — the board decision itself, in the majority opinion, relies heavily on a distinction made that this is uniquely — the NLRA is uniquely susceptible to a different view and the need for collective action, and we acknowledge that in the Horton opinion. We didn't exactly encourage you to take third on it, but it really does seem to me that until the Supreme Court rules on this, there's really not a lot — depends how bold the circuit is, I guess — to distinguish the controlling Supreme Court law. You've distinguished it, Sarlene, in your briefing, and the board in the majority opinion did. The dissenters don't distinguish it. What they see is undistinguishable, indistinguishable. It does seem to me, in due course, fairly soon, you didn't seek cert. It wasn't denied, as I recall, in Horton. You didn't seek it at all. But the Supreme Court needs to rule on this. And if the pattern continues as it has in the past, it's the board that needs to seek cert, not the — not the employer. Yes, Your Honor. Well, as I said, there was a — I mean, that was the first panel decision we received in    And I think it's important to note that the Supreme Court, in the majority opinion, did not seek it at all. issue. It's fairly well accepted, at least from folks in my office, that the board does not often secure Supreme Court review of issues such as this, the interpretation of Section 7 and so forth, absent a circuit split. There were other compelling circumstances at issue in Horton, including a question of the board's quorum that were at issue. And so the decision was ultimately made not to seek cert, as you point out in that case. That's not to say that the board will not do so at some point. But — A separate — I'm sorry. A separate issue in this case. a separate issue in this case. I mean, it's — it's a very — it's a very complex issue.  And I think that's why it's so important for us to be able to respond to these sorts of illegal — or to deal with these sort of illegal agreements. Does not at least a circuit or two saying that these are valid agreements have some impact on whether you should be seeking penalties against companies who are — who are relying on what the courts have said is a valid agreement? I mean, is it — for one thing, I don't quite understand Bill Johnson on that case and what exactly is required. But there certainly is a colorable argument supported by circuit case law that these are valid agreements, yet you're still calling it an unfair legal — unfair labor practice and an illegal agreement. Is there — those are distinguishable in your mind? Yes, Your Honor. There is — the jurisprudence in this area kind of goes down two paths. The first is there's a more recent decision, more recent than Bill Johnson's, of BE&K in which — BE&K construction. There was the issue of the valid petitioning under the First Circuit — or under the First Amendment, excuse me. And there was a determination by the Supreme Court that essentially for sham litigation, parties lose the protections of the right to — or lose the right to petition where there were cases are objectively basis and — as well as subjectively basis with their intent to retaliate or so forth. The situation in Bill Johnson's is slightly different. It's a subtle distinction, as I think the Third Circuit pointed out in the Teamsters case that we addressed in our brief. But it is a distinction nonetheless, where if a — if the lawsuit itself has an illegal objective, then the subject — the subjective intent of the party is not relevant. It's just a matter of what is being sought. And here under the Board's established principle, what is being sought is itself unlawful, and that is enforcement of an agreement that waives Section 7 rights. So from that, the Board has — it triggers the Board's broad remedial authority to make the parties whole, to put the parties back in the position they would have been absent the intent — or absent — intent is the wrong word — absent the action taken to enforce an illegal — or to engage in this lawsuit with an illegal objective. And the natural consequence of that would include the right to seek attorney's fees, although that is somewhat counterintuitive given that the party — the company in this case prevailed, because under the Board's principle, it had an illegal objective. And attorney's fees actually flows from that. JUSTICE SCALIA. Well, as all this gets sorted out, it does seem to me a certain level of mutual respect between Executive Branch and the courts might, to the extent it's discretionary, suggest such remedies might be curtailed since they're acting under the authority — the companies are of Circuit Court of Avenues. I float to that out there. MR. MOSS. I would also — I'm sorry. If there's — if you'd like me to respond, I don't have much more to say. JUSTICE SCALIA. I don't think there was anything to respond. MR. MOSS. I'm not sure there is either, Your Honor. I would also like to just briefly point out, as Your Honor did, that there is, in fact, a second violation here that survives and, in fact, is supported by the panel decision in D.R. Horton, as you pointed out, and that is that this agreement contains no exception in its broad language for employees' ability to file charges before the National Labor Relations Board, and that the Board found that it is reasonable — it would be reasonable for employees to construe that provision as prohibiting them from coming to the Board and filing unfair labor practice charges. And regardless of what we've talked about so far, that survives and is not precluded by the panel's decision. JUSTICE SOTOMAYOR. And when did that agreement cease being effective? MR. MOSS. I believe it was in the spring of 2012, Your Honor. JUSTICE SOTOMAYOR. 2012?    JUSTICE SOTOMAYOR. And do you have any reason to believe that the company is still using that agreement? MR. MOSS. Well, we — there was — there was no evidence presented before the Board or in the record that suggests that the — that the company rescinded that agreement with respect to employees who existed at that time. While there might have — while there might be a fairly high turnover, these are facts that are not on the record, but presuming that's accurate, it doesn't necessarily — it doesn't establish that that agreement is not being applied to existing — or to employees who existed in — who were employed in 2012. JUSTICE SOTOMAYOR. So what would the remedy be? MR. MOSS. The remedy would be a notice posting that that notice — or that, excuse me, that arbitration agreement and that provision was found to be unlawful. And I'm paraphrasing. The language is set out in the Board's order, I believe, in the appendix to the order. And to make clear that that policy has been rescinded or revised to comply with the — with the Board's decision as enforced by the Court. JUSTICE SOTOMAYOR. They did argue that the fact that — oh, fiddlesticks — the lady who is the plaintiff here wasn't inhibited from filing. And what — doesn't that cast any implication as to who is a reasonable petitioner in the case or who would be a reasonable employee in the case? MR. MOSS. Your Honor, the fact that one employee, despite the clear language of the agreement, nonetheless chose to file unfair labor practices doesn't change the fact that under Section 8A1, which is an objective standard of the reasonable person, that the Board found that a clear reading of the agreement would lead individuals to believe that they are prohibited from filing unfair labor practice charges. So while she in this one instance decided that she could, that doesn't establish that other employees would feel the same. And in fact, as I said, the very broad language with no exception for this type of proceeding would suggest the exact opposite of the action that she took. JUSTICE KENNEDY. What is the standard for the Board in deciding to order relief in a case like this, a cease and desist or an actual corrective action, if, in fact, you know, here we are, 2015, I think, and maybe not very many employees left that would be affected by the older agreement? Clarity of this, of the second revised language that specifically says such administrative actions can be brought? I mean, is there no sort of threshold, the mere fact that this older agreement could be misunderstood or properly understood, I think, from the Board's viewpoint, that it actually would not allow such actions, and so it's an error? Is there no threshold requirement of harm, of level of harm, of likelihood of harm, that needs to be met? MR. HENRY. No, Your Honor. It's the Board's noting posting requirement has long been a part of the Board's remedial authority and the Board's exercise of that authority in ensuring that other employees are not similarly interfered or coerced with respect to their exercise of Section 7 rights. So although we don't have a particular example that was set into the record here, the mere fact that, you know, three years has passed is not sufficient to establish that there are no employees who are still not living under this agreement that was given to them at the time that their employment began, or at least prior to 2012. So are there employees out there? I cannot stand before you and point to a portion of the record that would establish that. However, it has not been that much passage of time, and the burden on the company compared to the, you know, the violation that it has engaged in is minimal, putting out this notice and advising the employees that it is no longer applicable. JUSTICE KENNEDY. Does the holding that an unfair labor practice was committed have ramifications? The ramification you're talking about that you said is a limit of it, I don't want to and maybe directly notify employees, I don't know if that's in the order or not. Is there any other ramification that they have, if we uphold that, that Murphy Orr has been found guilty of an unfair labor practice in that respect? MR. GOLDSMITH. In this case, I cannot think of one off the top of my head. I mean, that's what the Board has ordered, and that's what the Board has limited the remedy to with respect to that violation. You know, there are consequences that flow from the failure to abide by an enforced order, of course. But there's no suggestion by the Board that that would take place and no presumption that that would take place. But that's the only one that I could possibly think of is if there was a failure to comply. Okay. Your Honors, I will not go into my closing about the substantive rights that we feel have been violated. We certainly understand the Court's position. We acknowledge the panel's effect in Horton, and we appreciate the opportunity to come here and discuss the case. JUSTICE GINSBURG. Well, you certainly briefed it thoroughly, so the Court is not unaware of your  Thank you. MR.  Thank you, Your Honor. JUSTICE GINSBURG. All right. Mr. Schwartz. MR. SCHWARTZ. Just one point, because Judge Smith asked the question about what would happen if this went back to the Board, based upon the panel's questions, this one issue about the first agreement potentially being violative of Section 7 and the notice-posting requirement that would flow from that if the Court went in that direction, and I could be mistaken about this, but I think what would happen then would be that there could conceivably be a compliance hearing before the National Labor Relations Board, so there would . . . that element could go back to the Labor Board, and in that proceeding, it could get litigated on whether or not the notice is necessary, and evidence would be presented to the Court. JUSTICE GINSBURG. Is that what you're advocating? MR. SCHWARTZ. No, I'm advocating for a complete rejection. JUSTICE GINSBURG. Well, I understand that, but if we were to uphold part of the remedy, does it really have to go back, or do you just uphold it, you know, grant the petition for review in  MR. SCHWARTZ. I believe that there's . . . JUSTICE GINSBURG. Oh, sorry, deny it in part. Excuse me. MR. SCHWARTZ. Right. JUSTICE GINSBURG. Enforce it. MR. SCHWARTZ. The Board's response to our 28J letter dealing with the dismissal of the underlying action, the Board referenced the further compliance hearing that would still have to be held if the Court somehow allowed any element of the Board's relief to stay intact following its decision in this case. So if we went to compliance, it's conceivable in that venue that it could get litigated on whether or not the notice is necessary or not. JUSTICE KENNEDY. I was checking . . . our able assistant was checking on what happened in D.R. Horton after our order. Similar to the situation we're discussing as a possibility here, we enforced in part and did not enforce in part. And we saw nothing further with clarity that happened at the Board thereafter. Are you aware of what further proceedings, if any, occurred in Horton after our decision? MR. SCHWARTZ. I'm not, Your Honor, but it wouldn't necessarily be something that would be available to the public. If a compliance hearing were held and ended in a result, that also is subject to a petition for review. So it's conceivable that if a party didn't like what happened in a compliance hearing, they could continue to contest the result of that hearing. And I would add in terms of that issue of the Section 7 violation the Board found with the first agreement and impliedly not informing employees of their right to file a nonfair labor practice. That would be subject to our 10B defense as well, that it was an untimely charge of discrimination to begin with, which would be another grounds for not upholding the Board on that particular point. JUSTICE GINSBURG. So what would your client's preference be? MR. ZIEGLER. Granting our petition for review. JUSTICE GINSBURG. I understand that. But on this matter of the notice? MR. ZIEGLER. You mean if you were to find . . . JUSTICE GINSBURG. If we were to believe that that part of the notice is overbrought based on D.R. Horton and we would enforce it, would we order it to be remanded or do we just do what D.R. Horton said and say enforce in part? MR. ZIEGLER. I believe the appropriate procedural device from this Court would be exactly what happened in D.R. Horton. And then the Board's remedy exists and is enforceable at that point subject to compliance. JUSTICE GINSBURG. Okay. My outstanding recollection in Horton is once we entered the opinion, the two sides got together and gave us a judgment that they agreed to on the language of what would happen thereafter. I don't know if that's the normal practice. I assume it is. So maybe we'll just have to face this down the road depending on what . . . MR. ZIEGLER.  JUSTICE GINSBURG. Depending on what we do. MR. ZIEGLER. If there's no questions, I have nothing further. JUSTICE KAGAN. All right.